IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WIDEVINE TECHNOLOGIES, INC.<br><br>      Plaintiff,<br><br>vs.<br><br>VERIMATRIX, INC.<br><br>      Defendant. | Case No. 2:07cv00321 TJW/CE<br><br>**Jury Trial Demanded**<br><br>The Honorable T. John Ward |

**PLAINTIFF WIDEVINE'S OPPOSITION TO DEFENDANT'S MOTION
TO STAY LITIGATION PENDING REEXAMINATION**

(**Oral Argument Requested**)

I.     **INTRODUCTION**

Defendant Verimatrix, Inc. ("Verimatrix") asks the Court to stay this patent litigation for four, five, six, or more years pending resolution of an *inter partes* reexamination. Verimatrix has not established its right to such an extraordinary remedy, and its motion should be denied for at least three compelling reasons.

1.     **Prejudice**.  Ordering a stay would put Plaintiff Widevine Technologies, Inc. ("Widevine") in an impossible position.  As explained in the accompanying declarations of Brian Baker and Glenn Morten, Widevine and Verimatrix are competitors in the fast-moving industry of providing encryption and content security for the distribution of digital video, such as over the Internet and other networks.  Widevine was the clear market leader before Verimatrix released its copycat digital encryption product.  Now Verimatrix is aggressively slashing prices and stealing market share from Widevine.  Widevine has only one main product, and prices on that product have been beaten down to *one-third of what they were before Verimatrix began infringing*.  The situation is dire; Widevine cannot wait one year, much less four, five, or six years.

2.     **Tactical Advantage.**  Verimatrix understands the harm it is doing to Widevine by infringing U.S. Patent No. 7,165,175 (the '175 patent) and by undercutting Widevine's prices.  For Verimatrix, delay means victory.  Staying this litigation for several years might allow Verimatrix to overtake Widevine as the market leader.  The evidence suggests that Verimatrix is intent on that strategy of delay.  Verimatrix admits that "it received a letter from Widevine on or about March 2007 regarding issuance of the '175 patent."  Yet, Verimatrix did not request reexamination at that time.  Neither did it request reexamination in August or September, shortly after the Complaint was filed.  Instead, Verimatrix dragged its feet, asking

for 45 additional days "to answer or otherwise respond to Plaintiff's Original Complaint," and claiming that discovery was premature, while failing to reveal its intent to request reexamination until two weeks ago, when discovery obligations were finally imminent.[1] The timing of Verimatrix's motion to stay, occurring not immediately but shortly before discovery would commence, is calculated to maximize the delay that a stay might impose. This timetable, reinforced by the substance and tone of Verimatrix's correspondence, reveals its dilatory tactics.

3. **Promised Simplification Illusory.** Citing statistics drawn from the meager *seven* *inter partes* reexaminations that had cleared the U.S. Patent and Trademark Office (PTO) as of March 31, 2007, Verimatrix claims that since "eighty six percent (86%) of all *inter partes* reexamination[s] canceled all claims," such a reexamination is all but certain to simplify or resolve this case. The conclusion is a *non sequitur*. The first seven *inter partes* reexaminations ever to be completed by the PTO are not representative of the majority of reexaminations pending in the PTO for four, five, or six years. Also, seven completed reexaminations are too small a sample size to draw any reliable conclusions about the results of *inter partes* reexamination.

Statistical invalidity aside, reexamination of the '175 patent is not likely to simplify (or eliminate) this litigation. The PTO evaluated the application that led to the '175 patent for more than six years. It considered 120 prior art references, including references disclosing similar technologies to those headlined in Verimatrix's motion. There is nothing new, unexpected, or fatal to the '175 patent's claims in the 16 references that Verimatrix cites in its

---

[1] Since the PTO has not granted Verimatrix's request for a reexamination, its motion is technically not even ripe yet. Cf. 35 U.S.C. § 318 ("once an order . . . has been *issued* under section 313," patent holder may move for a stay). While Widevine freely concedes the request is likely to be granted, until it is, Verimatrix is asking for an impermissible advisory opinion.

request for reexamination. Moreover, even if the PTO modified or canceled a significant number of the '175 patent's 92 claims, that would not simplify this litigation. Ultimately, any trial in this matter will likely be based on a handful of representative claims, and whether Verimatrix is found to infringe one claim or 92 claims, Widevine will be entitled to the same injunction and the same damages.

For these reasons, and the other reasons discussed in this Opposition and in the supporting materials, Verimatrix is not entitled to derail the train of justice. Its motion should be denied.

## II.   APPLICABLE STANDARDS

Ordinarily, the plaintiff "has a right to a determination of its rights and liabilities without undue delay." *Tyco Healthcare Group, L.P. v. Medrad, Inc.*, Civ. Act. No. 1:04-CV-773, 2005 U.S. Dist. LEXIS 42869, at *24 (S.D. Ohio Mar. 17, 2005). "The burden is squarely on the party seeking the stay to show there is a pressing need for a delay." *Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 209 (E.D. Tex. 1979). Under long-established precedent, the party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, *if there is even a fair possibility that the stay for which he prays will work damage to someone else.*" *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)(emphasis added). The presumption should be that the plaintiff is allowed to pursue the rights and remedies that brought him or her to court in the first place.

The district court's authority to control its own docket, and – in appropriate cases – to stay proceedings is not in question. "The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)(citing *Landis*, 299 U.S. at 254; *Gould v.*

*Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983). Management of its docket is left to the court's sound "exercise of judgment," through which the court weighs the parties' competing interests with an eye towards maintaining an "even balance" between the parties. *Landis*, 299 U.S. at 254-55.[2]

In deciding whether to stay proceedings pending reexamination, whether *ex parte* or *inter partes*, this Court normally considers the following factors:

    1.    Whether a stay will [a] <u>unduly prejudice</u> the nonmoving party, or [b] provide <u>a clear tactical advantage</u> to the moving party;

    2.    Whether a stay "will simplify the issues in question <u>and</u> trial of the case"; and

    3.    Whether discovery is complete and a trial date set.

*Soverain Software*, 356 F. Supp. at 662.[3] Assessed in light of recent precedent from the Eastern District of Texas, the facts do not support Verimatrix's motion to stay.

### III. ANALYSIS

#### A. STAYING HIS CASE FOR SEVERAL YEARS WOULD SEVERLY PREJUDICE WIDEVINE, AS WIDEVINE SUFFERS EROSION OF ITS PRICE STRUCTURE, LOSS OF MARKET SHARE, AND LOST BUSINESS OPPORTUNITIES.

In deciding whether to issue a stay, this Court first considers the prejudice a stay would inflict on the nonmoving party, here Widevine. In this case, the prejudice to Widevine would be acute. This factor therefore weighs strongly against a stay. *See Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-CV-364 (TJW), 2007 U.S. Dist. LEXIS 12973, at *4-*5 (E.D. Tex. Feb. 26, 2007) (potential for "indefinite delay" prejudices patent holder).

---

[2] Although Verimatrix cites 35 U.S.C. § 318, it correctly notes that this standard applies only when the "patent holder" moves for the stay. (Ver. Mot. at 5). Since Widevine is not moving for a stay and does not want one, 35 U.S.C. § 318 does not apply.

[3] Because Verimatrix's motion both prejudices Widevine and provides Verimatrix with a clear tactical advantage, Widevine discusses these elements separately for emphasis and clarity.

### 1. Staying This Case Will Delay Justice for Years.

Verimatrix is noncommittal about how long Widevine must wait at the gates of justice if a stay is granted; it offers only that the PTO is required by statute to conduct reexamination proceedings with "special dispatch." (Ver. Mot. at 9). The reality is far bleaker. With its motion, Verimatrix submitted a document entitled *Inter Partes* Reexamination Filing Data – March 31, 2007. (Walker Decl., Exhibit E). This document reveals that, although *inter partes* reexamination has existed since the end of 1999, the PTO has actually completed *only seven reexaminations* out of 249 requests filed. (*Id.*). Even for these seven, unusually speedy reexaminations, "special dispatch" took almost 30 months, or two-and-a-half years, without any appeals. (*Id.*). And these seven reexaminations, by definition, must be simpler than most of the hundreds of others that remain mired in the reexamination process. Verimatrix's attempt to extrapolate from these seven "outliers" is statistically unsound.

Walker Exhibit E also reflects that 21 requests for reexamination were filed in 2003. (*Id.*). Yet, again, only *seven* reexamination certificates had issued out of 249 requests filed as of March 31, 2007. This means that at least 14 of those 21 requested reexaminations from 2003, and likely more, are still pending ***four years later***. (*See id.*). For at least two-thirds or more of the reexaminations requested in 2003, the process has *already taken four years* and continues to grind on. That is more than double the time it might take to resolve this case through litigation. The reexamination of the '175 patent could thus take four or more years even before appeals.[4] And Verimatrix is already talking about its right to appeal any adverse

---

[4] *In Texas MP3 Techs., Ltd. v. Samsung Elecs. Co.*, this Court cited, in denying a motion to stay, plaintiff's assessment that "an *inter partes* reexam could be pending at the PTO for up to three years," even without an appeal. No. 2:07-CV-52, 2007 U.S. Dist. LEXIS 80392, at *4, n.1 (E.D. Tex. Oct. 30, 2007). Importantly, the defendant in *Texas MP3* did not request a stay that might continue even during appeal, as Verimatrix does. (*See* Ver. Mot. at 4) (discussing how this Court can "have the benefit" of "wisdom" from the Board of Patent Appeals

(continued…)

conclusions reached by the PTO to the Board of Patent Appeals and Interferences and then to the Federal Circuit, a prospect that might add two or more years to the process. (Ver. Mot. at 4).[5]

Even the uncertainty of not knowing when this case could proceed if stayed imposes a very real prejudice on Widevine. This court made exactly that point in *Biax Corp. v. Fujitsu*:

> The Court agrees with [plaintiff]. At this time, the PTO has not identified any particular claims at issue or provided any definitive guidance on the length of time required for the reexamination. *Accordingly, the potential delay for an indefinite period would likely prejudice [plaintiff]*.

*Biax Corp.*, 2007 U.S. Dist. LEXIS 12973 at *4 (emphasis added).

### 2. Widevine and Verimatrix are Direct and Intense Competitors.

Importantly, Widevine and Verimatrix are direct competitors, a fact that weighs heavily against any stay. (Baker Decl. at ¶¶ 32, 40, 47-50; Morten Decl. at ¶¶ 12-13). *See Purechoice, Inc. v. Honeywell Int'l, Inc.*, Civ. Act. No. 2:06-CV-244 (TJW), 2007 WL 1189844, at *1 (E.D. Tex. Apr. 20, 2007). Widevine invested tens of millions of dollars and years of painstaking labor to develop and market its patented Widevine Cypher encryption system – a system that offers unparalleled efficiency and ease-of-use. (Baker Decl. at ¶¶ 8-12, 43). Widevine conceived the system in 1999, when it was a small Seattle-based startup. But it took years of sustained effort to bring the product to market, as well as for the market to develop sufficiently to appreciate the technical improvements of the Widevine Cypher encryption system. (*Id.* at ¶¶ 8-12). Only in the past few years has Widevine finally begun to realize the rewards of its own innovation. By stealing Widevine's technology, Verimatrix is taking profits and market

---

(…continued)
and Interferences and the Federal Circuit, as well as the PTO). Regardless, under the facts of the instant case, a stay that lasted even a single year would severely prejudice Widevine.

[5] One of the disadvantages of the *inter partes* reexamination process is that both parties have the right to appeal any adverse decision. *See* 35 U.S.C. § 315.

share that should be Widevine's, while eroding the price structure *irrevocably*. (*Id.* at ¶¶ 43-50).

### 3. Widevine is Suffering Ongoing, Progressive Loss of Market Share, Price Erosion, And Loss of Business Opportunities.

Since coming into the market with its infringing Video Content Authority System (VCAS) and Real Time Encryption Server (RTES), Verimatrix has been aggressively slashing its prices to steal market share from Widevine. (Baker Decl. at ¶¶ 47-49). As a result of Verimatrix's infringing activities, Widevine has been forced to drop its own prices to compete with Verimatrix, the industry loss leader. (*Id.* at ¶ 57). Staggeringly, *Widevine's prices are now one-third what they were before Verimatrix entered the market with its copycat product.* (*Id.* at ¶ 41). And further price reductions may be necessary. (*Id.* at ¶ 49). As Verimatrix's prices plummet, Widevine must dive to follow those prices – leaving a vapor trail of lost profits and lost opportunities behind.

Widevine has only one main product line – its patented Widevine Cypher encryption system, the product Verimatrix is copying. (*Id.* at ¶¶ 9-12). Verimatrix's infringement, coupled with its aggressive price slashing, robs Widevine of the benefits of its extensive investment in the Widevine Cypher encryption system, nullifies the competitive advantage that should be provided by the '175 patent, and allows Verimatrix to freeload off the work product of others. (*Id.* at ¶ 43).

### 4. The '175 Patent's Real Value Is Now, Not in Five Years.

Like many Internet technology fields, the field of digital content security is evolving quickly. (Baker Decl. at ¶ 48). As Widevine President and C.E.O. Brian Baker states, "the underlying technology itself may well change substantially over the course of several years." (*Id.* at ¶ 48.) Given that the market for digital content security is expected to grow by 100%

annually for the foreseeable future, there is a huge incentive for other companies to enter the market with new technical innovations. (*Id.*). Ultimately, the competitive advantages enjoyed by Widevine as a consequence of the recently issued '175 patent may last no more than a few years. Staying this litigation would thus destroy the value of the '175 patent.

### 5. Money Damages Received A Decade Late Will Not Adequately Compensate Widevine.

Verimatrix's easy assurance that Widevine "has an adequate legal remedy . . . in money damages" rings hollow. (Ver. Mot. at 9-10). Verimatrix proposes that the Court stay this litigation for four to six years and then allow it to resume. But receiving damages in six to ten years, after the reexamination is over and this litigation has finally concluded, will not fairly compensate Widevine. It will be too little, too late. Such late-arriving relief cannot compensate for the loss of years of market leadership that Widevine should be enjoying because of its innovations. It cannot compensate for lost opportunities to invest in the next generation of technology. And it cannot compensate for an eroded price structure that never returns to what it would have been absent Verimatrix's infringement. (*See* Baker Decl. at ¶¶ 47-50). Moreover, if Verimatrix's overly aggressive tactics force it out of business down the road, Widevine may not even receive money damages. The harm that Verimatrix is causing Widevine is urgent and continuing. The longer Verimatrix ties up this lawsuit with dilatory tactics, the greater the likelihood that Widevine will never fully recover.

### 6. Loss of Evidence.

In addition to causing the "fundamental harm of delaying final resolution," staying this case for an indefinite period of time threatens to prejudice Widevine's ability to fairly prosecute its patent infringement action when the stay is finally lifted. *See Biax Corp.*, 2007 U.S. Dist. LEXIS 12973, at *4. This Court has recognized that "crucial witnesses are more likely to be

located if discovery is allowed to proceed now, rather than later." *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007). Given that "witnesses may become unavailable, their memories may fade, and evidence may be lost while the PTO proceeding takes place," Widevine would be at a severe tactical disadvantage if the entire case were stayed pending a reexamination process that might take four, five, or even six or more years to complete. *Gladish v. Tyco Toys, Inc.*, No. S-92-CV-1666, 1993 U.S. Dist. LEXIS 20211, at *5-*6 (E.D. Cal. Sept. 16, 1993); *see also Anascape*, 475 F. Supp. 2d at 617.[6]

In summary, the specific facts of this case make the prejudice to Widevine more acute than usual. For this reason alone, Verimatrix's motion should be denied.[7]

### B.   STAYING THIS CASE FOR FOUR, FIVE, SIX, OR MORE YEARS WOULD HELP VERIMATRIX ACHIEVE VICTORY THROUGH DELAY.

Along with prejudice to the nonmoving party, courts consider whether granting a motion to stay would give the moving party a clear tactical advantage. *Soverain Software*, 356 F. Supp. 2d at 662. One such advantage is delay.[8] As this Court indicated in *PureChoice*, if the request for reexamination was "filed in an effort to delay the suit from going forward," that weighs against a stay. 2007 WL 1189844, at *1. Given the competitive realities discussed above and in the Baker Declaration, a stay of four to six years might allow Verimatrix to replace Widevine as the market leader. For Verimatrix, delaying this lawsuit thus means

---

[6] Verimatrix asks why Widevine has not moved for a preliminary injunction. (Ver. Mot. at 10). The answer is that Widevine has not ruled it out, but was hoping to complete initial discovery before making that decision. (Beattie Decl. at ¶ 2). Because the products at issue involve software, being able to conduct discovery on the source code and object code of the accused Verimatrix products would be helpful, although not necessary, in deciding whether, and when, to seek injunctive relief.

[7] Verimatrix invites the Court to consider the prejudice to Verimatrix that will supposedly occur if the Court denies the Motion to Stay. (Ver. Mot. at 11). But the three (or four) factor test employed by the Eastern District of Texas does not examine the alleged prejudice to the moving party. *See Soverain Software*, 356 F. Supp. 2d at 662. Instead, it looks at whether the nonmoving party will be prejudiced and whether the moving party will gain some sort of tactical advantage. *Id.*

[8] Some decisions have not reiterated this factor quite right, so that it appears that the analysis focuses on the non-movant. But it makes no sense to ask if the nonmoving party will gain a clear tactical advantage from the motion to stay, since – if the moving party were concerned about that – it could simply forego the motion.

possible victory through infringement. And it is clear to Widevine that Verimatrix's motion is intended to secure that victory.

Verimatrix is already alerting the Court that it intends to appeal any adverse ruling from the PTO to the Board of Patent Appeals and Interferences and then to the Federal Circuit. (Ver. Mot. at 4). Verimatrix argues that this Court can "have the benefit of not only the PTO's wisdom, but also a decision from the Board of Patent Appeals and Interferences ('BPAI') and the Court of Appeals for the Federal Circuit ('CAFC')." (*Id.*). Verimatrix's early attempt to vaccinate the Court against the outrage of additional delays reveals its intentions. Widevine will be stuck at the PTO for years and years, without discovery, without the opportunity for clarifying motion practice, and without getting to a jury. Any doubt as to Verimatrix's intentions has been removed by its early dealings in this litigation.

Verimatrix learned about the '175 patent at least as early as March of 2007. (Answer, ¶ 13)(Docket No. 13). Yet, Verimatrix did not file a request for reexamination shortly thereafter. Verimatrix began this case by requesting an additional 45 days to answer Widevine's straightforward, four-page, one-count Complaint. (*See* Ver.'s Unopposed Motion for Extension of Time, Docket No. 8.) That seemed like an unusually long time to answer such a simple Complaint. Now it appears that Verimatrix used this additional time to begin work on its request for reexamination; it did not need the extra time to "answer" at all.[9] The request for reexamination, which Verimatrix showed no interest in filing previously, would provide a basis for delaying this lawsuit.

Once Verimatrix finally filed its Answer, Widevine wanted to get this case moving. Widevine's counsel asked Verimatrix's counsel "to find a time this week or next to schedule

---

[9] Verimatrix has known about the '175 patent since at least March 2007. (Complaint, ¶ 13.) Yet, it did not seek reexamination until December 5, 2007. (*See* Walker, Exhibit A.)

our Rule 26(f) conference." (Beattie Decl., Exhibit 1). Verimatrix's response was, "[s]ince the Court has not issued a scheduling order yet, it seems to us that an FRCP 26(f) conference would be premature." (Beattie Decl., Exhibit 2). This response ignores, of course, the fact that it is never too early to have a Fed. R. Civ. P. 26(f) conference, since Rule 26(f) specifies that such a conference must occur "as soon as practicable." *See* Fed. R. Civ. P. 26(f). In the succeeding two months, Verimatrix's position was that doing anything on this case, except preparing its reexamination ambush, was "premature." (*See generally* Exhibits to Beattie Decl.).

For example, when Widevine's counsel circulated a possible protective order so discovery could begin in earnest, Verimatrix ignored Widevine's request for comments and two follow-up letters for more than a month. After five weeks, Verimatrix's counsel responded by e-mail, again revealing Verimatrix's strategy of delay: "In light of our motion to stay the proceedings, we will defer responding to this until that motion has been adjudicated." (Beattie Decl., Exhibit 6). Verimatrix's tactics thus could not be clearer – delay this litigation by any means necessary. Verimatrix's request for reexamination appears to be more about getting this case stayed than about whether the '175 patent is truly invalid. This factor thus also weighs strongly against a stay.

### C. VERIMATRIX'S PROMISES OF SIMPLIFICATION OR ELIMINATION OF ISSUES THROUGH REEXAMINATION ARE EXAGGERATED.

Courts also consider whether a stay "will simplify the issues in question and trial of the case." *Soverain Software*, 356 F. Supp. at 662. Attempting to draw conclusions from the *seven inter partes* reexaminations concluded as of March 2007 (Walker Exhibit E), Verimatrix promises simplification, or even resolution, of this case, because "eighty six percent (86%) of

- 11 -

all *inter partes* reexamination certificates issued to date [those *seven*] canceled all claims." (Ver. Mot. at 7). The argument utterly lacks merit.

The first seven reexams to make it through the new *inter partes* reexamination process are likely to be statistical "outliers" – particularly good candidates for cancellation. Additionally, seven is too small a statistical sample size to say anything meaningful about likely outcomes during reexamination. This same "data" (from Walker Exhibit E) would lead one to conclude that the PTO issues unmeritorious patents 86% of the time, which cannot be the case. The PTO will have to complete many more *inter partes* reexaminations before anyone can rely on data concerning the procedure.

*Ex parte* reexaminations have been around a lot longer than the relatively new *inter partes* reexamination procedure. Data concerning that more established procedure suggest that *all claims* of a patent are only canceled about 12% of the time. *See Soverain Software*, 356 F. Supp. 2d at 662. There is no reason to assume that *inter partes* reexamination will ultimately offer significantly higher cancellation rates. Ultimately, cancellation of all claims of a patent will be an unlikely event in any sound reexamination system.

Weighing the "unlikelihood" of such an outcome, this Court, in *Soverain Software*, concluded that it would be improper to grant a stay merely because reexamination *could* result in simplification or resolution of a case. While simplification is uncertain, delay is guaranteed. As the Court explained:

> To do so would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination.

*Id.* That is what is happening here – reexamination is being used primarily as a tactic to derail this litigation.

- 12 -

Regardless, the specific facts of this case suggest that reexamination will not be the panacea that Verimatrix represents. For example, we know that the PTO carefully reviewed the application that led to the '175 patent (U.S. Appl. No. 09/656,166) (the '166 application). That application was filed on September 6, 2000. But the '175 patent did not issue until January 16, 2007. The PTO thus took six years and four months to grant this patent application. That was plenty of time to consider the prior art and get it right. We also know that approximately 120 different references, 120 different pieces of prior art, were before the PTO during prosecution of the '166 application. (Wiegand Decl. at ¶ 4.) Yet, Verimatrix wants this Court to believe that throwing another 16 references into the mix would completely change the outcome. (Walker, Exhibit A).

In its Motion to Stay, Verimatrix highlights two of these 16 "new" references as being particularly important – Adams and Colligan. (Ver. Mot. at 12-13). Verimatrix assures the Court that the technology disclosed in these highlighted patents was "not considered by the PTO during examination . . . ." (*Id.* at 12). Not true. A closely related Adams patent *was in fact before the examiner*. The Adams patent to which Verimatrix attaches such undue significance is U.S. Patent No. 5,444,782 ('782 patent), entitled Computer Network Encryption/Decryption Device. (*See* Ver. Mot. at 12). Listed on the long list of references considered by the examiner is another Adams patent, U.S. Patent No. 5,640,456 ('456 patent), also entitled Computer Network Encryption/Decryption Device.

Both the '782 patent and the '456 patent are continuations of the same original application.[10] (Wiegand Decl. at ¶¶ 6-7). Both have similar specifications and share many identical figures. Tellingly, the Adams patent explicitly listed on the '175 patent, the one

---

[10] The '782 patent is technically a continuation in part.

- 13 -

considered by the examiner (the '456 patent), is the *more* recent one. And it specifically lists the '782 patent on its front page. In short, the examiner was fully aware of the Adams technology, contrary to Verimatrix's representations.

Verimatrix attempts an early preview of claim construction arguments. (Ver. Mot. at 12-13). The Court need not enter that swamp to deny Verimatrix's motion, given the abundant evidence of prejudice and dilatory tactics. Briefly, however, Adams and Colligan represent less advanced "selective encryption" technology. (*See* Wiegand Decl. at ¶ 8; Baker Decl. at ¶¶ 17-31). Just finding the words "selective encryption," or some sort of selective encryption technology, in a prior art reference does not mean that the reference anticipates or renders obvious even a single claim of the '175 patent. The claims of the '175 patent can be distinguished over the prior art, including Adams and Colligan, by how, when, and where selective encryption occurs. (Wiegand Decl. at ¶ 8). For example, Adams encrypts based on information in an IP header, while Colligan encrypts before data is put into packets, not after. (Baker Decl. at ¶¶ 20-21; Wiegand at ¶ 8). The '175 patent represents another evolutionary step beyond either of those technologies. (*Id.*). But those are nuances that this Court should not be forced to decide in the context of this procedural motion.

Finally, even if Verimatrix succeeded in cancelling or modifying one or more of the '175 patent's 92 claims, that would not necessary simplify this litigation.[11] If Widevine tries a handful of representative claims and proves that Verimatrix infringes even one of those claims, it will be entitled to the injunctive relief, as well as the damages, it seeks. Reexamination is

---

[11] The fact that the '175 patent has 92 claims again presages a long reexamination process in the PTO.

thus unlikely to simplify trial of this matter at all and cannot justify a delay of four, five, six, or more years.[12]

## IV.    CONCLUSION

Verimatrix has not established its entitlement to a stay. Such a stay would severely prejudice Widevine, would give Verimatrix a clear tactical advantage, and would offer little or no simplification. Verimatrix's motion should be denied.

Respectfully submitted,

DARBY & DARBY P.C.

Dated: December 20, 2007        By:    s/ David K. Tellekson
David K. Tellekson
Washington State Bar No. 33523
Robert L. Jacobson
Washington State Bar No. 30838
1191 Second Avenue
Seattle, Washington 98101
Telephone: (206) 262-8900
Facsimile: (206) 262-8901
Email: dtellekson@darbylaw.com

Matthew D. Orwig
Texas State Bar No. 15325300
Sonnenschein Nath & Rosenthal LLP
1717 Main Street, Suite 3400
Dallas, Texas 75201
Telephone: (214) 259-0990
Facsimile: (214) 259-0910
Email: morwig@sonnenschein.com

*Attorneys for Widevine Technologies, Inc.*

---

[12] Widevine candidly admits that the fourth factor, "whether discovery is complete and a trial date set," favors a stay. However, that factor is overborne by the other factors. Moreover, as set forth in the Exhibits to the Beattie Declaration, Widevine has been trying to move this case forward, only to be stymied by Verimatrix.

# CERTIFICATE OF SERVICE

I, Lawrence A. Gallwas, hereby certify that on December 20, 2007, I caused the foregoing **Plaintiff Widevine's Opposition to Defendant's Motion to Stay Litigation Pending Reexamination** to be served on the following parties as indicated below:

| | |
|---|---|
| **Brian E. Mitchell**<br>**Kent M. Walker**<br>**Michael G. Rhodes**<br>**Timothy S. Teter**<br>Cooley Godward Kronish LLP<br>4401 Eastgate Mall<br>San Diego, CA 92121<br><br>*Attorneys for Defendant Verimatrix, Inc.* | [ ]  By United States Mail<br>[ ]  By Legal Messenger<br>**[X] By Electronic CM/ECF**<br>[ ]  By Overnight Express Mail<br>[ ]  By Facsimile<br>[ ]  By Email [by agreement of counsel]<br>    bmitchell@cooley.com<br>    kwalker@cooley.com<br>    rhodesmg@cooley.com<br>    teterts@cooley.com |
| **Michael Charles Smith**<br>The Roth Law Firm<br>115 N. Wellington, Suite 200<br>P.O. Box 876<br>Marshall, TX 75671<br><br>*Attorneys for Defendant Verimatrix, Inc.* | [ ]  By United States Mail<br>**[X] By Legal Messenger**<br>**[X] By Electronic CM/ECF**<br>[ ]  By Overnight Express Mail<br>[ ]  By Facsimile<br>[ ]  By Email [by agreement of counsel]<br>    ms@rothfirm.com |

DATED: December 20, 2007

s/Lawrence A. Gallwas
For David K. Tellekson, WSBA No. 33523
Robert L. Jacobson, WSBA No. 30838
DARBY & DARBY P.C.